```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
-------------------------------------------------------
                                              :
SANDRA BUXTON,                                :   Case. No. 5:15-CV-593
                                              :
            Plaintiff,                        :
                                              :
    v.                                        :   OPINION & ORDER
                                              :   [Resolving Doc. 1 ]
CAROLYN W. COLVIN,                            :
ACTING COMMISSIONER OF                        :
SOCIAL SECURITY,                              :
                                              :
            Defendant.                        :
                                              :
-------------------------------------------------------
```

JAMES S. GWIN, UNITED STATES DISTRICT JUDGE:

In this social-security disability benefits case, Plaintiff Sandra Buxton objects to the Magistrate Judge's Report and Recommendation, that recommends affirming the Administrative Law Judge's ("ALJ") denial of benefits. Because the ALJ had substantial evidence supporting his decision, the Court **OVERRULES** Plaintiff's objections, **ADOPTS** the recommendation of the Magistrate Judge and **AFFIRMS** the ALJ's denial of benefits.

## I.   Background

On March 14, 2012 Buxton filed applications for Supplemental Security Income.[1] She alleged an August 11, 2003 disability onset date. After her applications were denied initially and upon reconsideration, Buxton requested a hearing before an ALJ.

Buxton appeared with counsel at a hearing before ALJ Charles Shinn.[2]

On December 9, 2013, the ALJ determined that Buxton was not disabled within the meanings of the Social Security Act. The ALJ's findings can be summarized as follows:

1. Buxton last met the insured status requirements on March 31, 2009.[3]

---
[1] Doc. 9 at 58.
[2] *Id*. at 66.
[3] *Id*. at 60.

Case No.15-cv-593
Gwin, J.

2. Buxton had not engaged in substantial gainful activity during the period from her alleged onset date of August 11, 2003, through her date last insured of March 31, 2009.[4]

3. Through the date last insured, Buxton had the following severe impairments: adhesive capsulitis, right shoulder; carpal tunnel syndrome; and borderline intellectual functioning, reading disorder.[5]

4. Through the date last insured, Buxton did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments.[6]

5. Through the date last insured, Buxton had the RFC to perform light work except she must never climb ladders, ropes, or scaffolds and must do no overhead reaching bilaterally; is limited to frequent handling, fingering, and feeling bilaterally; must avoid temperature extremes of cold and must avoid hazards such as dangerous machinery and unprotected heights; is limited to simple, routine tasks that do not involve arbitration, negotiation, confrontation, directing the work of others or being responsible for the safety and welfare of others; cannot perform piece rate work or assembly line work; and is limited to occasional interaction with others.[7]

6. Through the date last insured, Buxton was unable to perform any past relevant work because her past work was medium exertion work.[8]

7. Buxton was born in 1961 and was 47 years old, which is defined as a younger individual age 18-49, on the date last insured.[9]

8. Buxton had at least a high school education and was able to communicate in English.[10]

9. Transferability of job skills was not an issue because Buxton's past relevant work was unskilled.[11]

10. Through the date last insured, considering Buxton's age, education, work experience and RFC, there were jobs that existed in significant numbers in the national economy that Buxton could perform, including mail clerk, office helper, and collator operator.[12]

---

[4] *Id*.
[5] *Id*.
[6] *Id*. at 60-62.
[7] *Id*. at 62-64.
[8] *Id*. at 64.
[9] *Id*.
[10] *Id*. at 65.
[11] *Id*.
[12] *Id*.

2

Case No.15-cv-593
Gwin, J.

Buxton filed this complaint, and the Court referred the matter to Magistrate Judge Kathleen B. Burke. Magistrate Judge Burke issued a Report and Recommendation, finding that the ALJ's determination was supported by substantial evidence and recommending that the Court deny Buxton's appeal.[13] Specifically, the Magistrate Judge found that substantial evidence supports the ALJ's determination that Plaintiff's impairments did not meet Listing 12.05C.

Buxton now objects to the R&R.[14] Buxton argues that the ALJ relied on scant evidence to find that substantial evidence supported the ALJ's conclusion. This Court reviews the objections de novo.

## II.  Legal Standard

In reviewing an ALJ's disability determination under the Social Security Act, a district court is limited to reviewing whether the ALJ's decision is "supported by substantial evidence and is made pursuant to proper legal standards."[15] Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[16] A district court should not try to resolve "conflicts in evidence or decide questions of credibility,"[17] and may not reverse an ALJ's decision when substantial evidence supports it, even if the court would have made a different decision.[18]

To establish disability under the Social Security Act, Plaintiff must show that she cannot engage in any substantial gainful activity because of a "medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve months."[19] Plaintiff's impairment must prevent her

---

[13] Doc. 15.
[14] Doc. 16.
[15] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007); *see also* 42 U.S.C. § 405(g).
[16] *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted).
[17] *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).
[18] *Siterlet v. Sec. of Health and Human Servs.*, 823 F.2d 918, 920 (6th Cir. 1987).
[19] *See* 42 U.S.C. § 423(d).

3

Case No.15-cv-593
Gwin, J.

from doing her previous work or any other work existing in significant numbers in the national economy.[20]

### III. Discussion

*A. Listing 12.05C*

Plaintiff Buxton says that the ALJ erred in his analysis of Plaintiff's cognitive impairment at Step Three for Listing 12.05. In order to satisfy this Listing, a claimant must first satisfy the diagnostic description of the introductory paragraph, and then satisfy any one of the four sets of criteria in Listing 12.05.

> 12.05 Intellectual disability: Intellectual disability refers to significantly subaverage intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> C.A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function . . .

The ALJ wrote the following in considering Listing 12.05C:

> Finally, the 'paragraph C' criteria of listing 12.05 were not met because the claimant did not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. While she did attain a verbal performance IQ of 69 on evaluation in 2004, it is not accepted as valid. There is insufficient evidence to substantiate the onset of impairment occurred before age 22. The claimant was apparently not in special education. She dropped out of high school in the 10th grade, and deficits could be related to lack of education, rather than intellectual disability. The claimant did end up attaining her GED in 2005. The claimant's actual functioning does not support an IQ in this range.[21]

---

[20] *Id.*
[21] Doc. 9 at 62.

4

Case No.15-cv-593
Gwin, J.

The Court adopts and incorporates Magistrate Judge Burke's analysis here. Nevertheless, it is necessary to respond to the objections that were filed in response to the R & R. Of note, the facts in this case are undisputed; Buxton raises no objections opposing Judge Burke's description of the facts, nor any argument against the ALJ's elaboration of the facts.

At their core, Buxton's objections raise questions of law—i.e., (1) whether the ALJ properly applied the applicable regulations and (2) whether the ALJ's decision to invalidate Buxton's IQ score was supported by substantial evidence.

Substantial evidence is more than a scintilla of evidence, but less than a preponderance.[22] This Court cannot reverse the ALJ's decision, even if substantial evidence exists in the record that would have supported an opposite conclusion, so long as substantial evidence supports the ALJ's conclusion.[23] This Court agrees with Magistrate Judge Burke that the ALJ received substantial evidence that supported the ALJ's analysis of Listing 12.05C.

Plaintiff Buxton contends that her Verbal IQ score of 69 is valid because Dr. Seibel did not question the validity of her intelligence testing. However, as Magistrate Judge Burke points out, "[a] finding that the claimant was uncooperative or acted in bad faith during the test . . . is not required . . . to properly invalidate an IQ score."[24] Further, "other factors outside of the test itself, including life skills, daily activities, and past work experience" can also be considered in determining the validity of an IQ score.[25]

---

[22] *Richardson*, 402 U.S. at 401.
[23] *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997).
[24] *Brooks v. Astrue*, 2010 WL 1254323, *4 (N.D. Ohio Mar. 24, 2010).
[25] *Id*.

5

Case No.15-cv-593
Gwin, J.

Here, the ALJ considered a variety of factors. First, the ALJ considered Dr. Seibel's psychological evaluation, including test scores from the tests administered by Dr. Seibel.[26] Second, the ALJ considered the fact that, although Buxton dropped out of high school, she was able to work as a machine operator and packer for nine years. The ALJ also considered the facts that Buxton did not attend special education classes while in school and that she was obtained a GED after leaving high school.[27] The ALJ also considered that Buxton's intellectual limits could be related to her lack of education rather than intellectual disability. She had dropped out of high school.[28] Plaintiff contends that the ALJ's reliance on her lack of education as explanatory of Plaintiff's IQ testing was improper. However, Plaintiff cites to no authority to support that contention, and the ALJ relied on a number of factors besides Plaintiff's lack of education in finding that she did not meet the listing.

Plaintiff Buxton also contends that the ALJ erred in finding that there was insufficient evidence to substantiate the onset of impairment before age 22.

The ALJ considered evidence pertaining to Plaintiff's daily activities, social functioning, and concentration, persistence or pace.[29] With respect to daily activities and social functioning, the ALJ found only mild limitations, commenting "she is able to handle her personal hygiene, prepare meals, and do laundry and cleaning. She is able to drive and go shopping. She enjoys watching TV, camping, playing cards, swimming and bingo" and "the records do not reflect any problems getting along with others . . . She gets along with authority figures."[30] As to concentration and persistence of pace, the ALJ found moderate difficulties, commenting,

---

[26] Doc. 9 at 62-64.
[27] *Id*. at 62.
[28] *Id*.
[29] *Id*. at 61.
[30] *Id*.

6

Case No.15-cv-593
Gwin, J.

> She was diagnosed with a reading disorder and a disorder of written expression in 2004. However, she was able to attain a GED in 2005, and she maintains a driver's license. She has successfully held jobs as a machine feeder and hand packager. She is able to pay bills, count change, handle a savings account, and use a checkbook. She is able to focus enough to watch TV, play cards, and play bingo. She stated she does not handle stress well, but she handles changes in routine ok.[31]

The ALJ also noted the lack of any indication that Plaintiff Buxton had difficulty with her past jobs because of intellectual difficulties.[32] As Magistrate Judge Burke points out, Plaintiff lost one job due to the company shutting down, and she stopped working another job in 2003 because of a physical, not a mental, impairment.[33]

Plaintiff Buxton emphasizes evidence showing that she struggled in school, repeating at least the third grade, and achieving failing and below-average grades. However, as Magistrate Judge Burke notes, "'poor academic performance' alone is not enough to demonstrate onset of subaverage intellectual functioning prior to age 22."[34] The Sixth Circuit has held that "neither circumstantial evidence such as school records nor a history of special education combined with an adult IQ score are necessarily enough to demonstrate that a claimant had adaptive functioning deficits before age twenty-two."[35]

Plaintiff Buxton also points to evidence showing that she made multiple attempts before she obtained her driver's license at the age 32.[36] However, as Magistrate Judge Burke notes, "while Buxton did not obtain her driver's license until she was 32 years of age, she indicated that she was a little scared to get a license and she had previously lived

---

[31] *Id.*
[32] *Id.* at 64.
[33] *Id.* at 82-84, 251.
[34] Doc. 15 at 15.
[35] *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 540 (6th Cir. 2014) (collecting citations).
[36] Doc. 10 at 8.

7

Case No.15-cv-593
Gwin, J.

in an area that allowed her to walk or take the bus places."[37] Further, "while Buxton required certain accommodations in order to pass her driver's license test and the GED, she nonetheless passed both tests."[38]

Finally, Dr. Seibel diagnosed plaintiff with reading disorder, disorder of written expression, and borderline intellectual functioning, not mental retardation. As Magistrate Judge Burke points out, "while a diagnosis of mental retardation is not required in order for a claimant to satisfy Listing 12.05C, the lack of a mental retardation diagnosis is an appropriate consideration when assessing whether an impairment satisfied Listing 12.05C."[39]

This Court agrees with Magistrate Judge Burke that the ALJ properly applied the Listings. Evidence could have supported an ALJ decision that Buxton was disabled. But, sufficient and substantial evidence supports the ALJ's decision to find that Plaintiff did not meet Listing 12.05C.

### IV.  Conclusion

For the reasons above, the Court **ADOPTS** the recommendation of the Magistrate Judge and **AFFIRMS** the ALJ's denial of benefits.

IT IS SO ORDERED.

Dated:  March 31, 2016                           *s/         James S. Gwin*
                                                 JAMES S. GWIN
                                                 UNITED STATES DISTRICT JUDGE

---

[37] Doc. 15 at 86.
[38] *Id*. at 61, 62.
[39] *Peterson v. Comm'r of Soc. Sec.*, 552 F. App'x 533, 539 (6th Cir. 2014) (citing *Cooper v. Comm'r of Soc. Sec.*, 217 Fed.App'x. 450, 452 (6th Cir. 2007)).